# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No.: 3:12-cr-00109-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **CHESTER EVANS DAVIS**, | |
| Defendant. | |

S. Amanda Marshall, United States Attorney, District of Oregon, and Stacie F. Beckerman and Craig J. Gabriel, Assistant United States Attorneys, 1000 S.W. Third Avenue, Suite 600, Portland, Oregon  97204-2902. Attorneys for Plaintiff.

Lynne B. Morgan, Pacific Northwest Law, LLP, 1420 World Trade Center, 121 SW Salmon Street, Portland, Oregon  97204. Attorney for Defendant.

**SIMON, District Judge**.

Defendant Chester Evans Davis is charged with ten criminal counts (originally eleven), consisting of: one count of Evasion of Payment of Taxes, 26 U.S.C. § 7201; four counts of Evasion of Assessment of Taxes, 26 U.S.C. § 7201; four counts of Willful Failure to File Corporate Tax Returns, 26 U.S.C. § 7203; and one count of Endeavoring to Obstruct the Due Administration of the Internal Revenue Laws, 26 U.S.C. § 7212(a). On March 22, 2012, the Court held a *Faretta* hearing. *See Faretta v. California*, 422 U.S. 806 (1975). The Court found that Mr. Davis did not unequivocally, knowingly, and voluntarily waive his right to representation by counsel. Accordingly, the Court appointed Lynne B. Morgan to represent Mr. Davis. Dkt. 20.

On February 28, 2013, two business days before the long-scheduled trial date, Ms. Morgan filed two motions. First, she moved for a determination of Defendant's mental competency. Dkt. 97. Second, Ms. Morgan moved for an order clarifying her role as defense counsel. Dkt. 99. For the reasons discussed below, the Court denies the motion for a determination of mental competency and grants the motion for an order clarifying the role of counsel. The Court clarifies Ms. Morgan's role as set forth below.

A.    **Motion for a Determination of Mental Competency**

Ms. Morgan moves the Court to hold a hearing to determine Mr. Davis's mental competency to stand trial. Dkt. 97. "A criminal defendant may not be tried unless he is competent." *Godinez v. Moran*, 509 U.S. 389, 396 (1993). A district court must hold a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). A competency hearing is not required unless there is a "substantial or bona fide doubt of competency." *Hernandez v. Ylst*, 930 F.2d 714, 716 (9th Cir. 1991) (internal quotation marks and citation omitted). The "standard for competency is the 'ability to understand the proceedings and to assist counsel in preparing a defense;' this is measured by 'evidence of the defendant's irrational behavior, his demeanor in court, and any prior medical opinions on his competence.'" *United States v. Mitchell*, 502 F.3d 931, 986 (9th Cir. 2007) (quoting *Miles v. Stainer*, 108 F.3d 1109, 1112 (9th Cir.1997)).

Ms. Morgan states that Mr. Davis has consistently refused to cooperate with her in mounting a defense. She explains:

> Mr. Davis has met with [me] on just one brief occasion,[1] during which he
> politely but firmly told me that he could not avail himself of my services
> for to do so would "put him under contract" with the Court. He has
> subsequently refused to work with his defense team in any manner
> whatsoever and all attempts I have made to engage him in the defense of
> his case are met with correspondence in which Mr. Davis "fires" me.

Dkt. 103 at ¶ 2. She also states that Mr. Davis has not "respond[ed] appropriately to the Court's questions" during hearings. *Id.* at ¶ 3. In addition, Mr. Davis has "engaged the services" of a "self-styled 'non-bar' attorney and a 'private attorney general[.]'" *Id.* at ¶¶ 4-5.

Ms. Morgan met with Mr. Davis a second time after the Pre-Trial Conference held on February 20, 2013. Ms. Morgan states that she found her conversation with Mr. Davis during this meeting to be:

> both disturbing and concerning. His thought process seemed to be loose
> and somewhat incoherent. . . . Mr. Davis . . . directed me not to undertake
> any actions at all during the trial of this matter – no opening statement, do
> not question any of the witnesses, make no trial objections and no
> argument. At the end of our conversation, Mr. Davis became very
> emotional, seemingly overcome with religious ecsta[s]y, while he told me
> not to worry about him or the case, that "everything was in God's hands."

*Id.* at ¶ 6.

In response, the United States contends that Mr. Davis's behavior during hearings does not suggest that Mr. Davis is unable to understand the proceedings and to assist counsel in preparing a defense. Instead, the United States argues that Mr. Davis is *unwilling* to assist Ms. Morgan in preparing a defense. Dkt. 110 at 3.

The Court finds that a competency hearing is unwarranted and Mr. Davis is competent to stand trial. Mr. Davis's responses to the Court's inquiries are often unresponsive. For example,

---

1 As Ms. Morgan later makes clear, she met with Mr. Davis a second time after the Pre-Trial Conference held on February 20, 2013.

Mr. Davis often responds to questions by citing the Uniform Commercial Code and stating that he "reserves all of his rights." On October 29, 2012, however, at Mr. Davis's request, and with consent of both the United States and Ms. Morgan, the Court conducted a private colloquy on the record, sealed, with Mr. Davis outside of the presence of attorneys for the United States and Ms. Morgan. Dkt. 95 at 18-31. During this colloquy, Mr. Davis explained that he did not wish to subject himself to the jurisdiction of the Court. Throughout the colloquy, Mr. Davis was lucid, responsive, intelligent, and respectful. Although Mr. Davis's positions are somewhat unconventional (although his statements are similar to those other many other "tax protesters"), they do not appear to be the result of any mental disease or defect. Mr. Davis understands that he has been charged with federal crimes relating to the tax laws, and the colloquy made clear to the Court that if Mr. Davis wanted to do so, he could assist Ms. Morgan in preparing a defense. Mr. Davis has, however, knowingly and voluntarily chosen not to work with his court-appointed counsel in preparing a defense in this case.

Additional evidence submitted by the United States further supports the conclusion that a competency hearing is unnecessary. In a "Memorandum of Conversation," Internal Revenue Service Special Agent Scott McGeachy described an interview with Shaun McAravey, a friend of Mr. Davis's who has frequently visited Mr. Davis since his pre-trial incarceration began in March 2012. According to Special Agent McGeachy, Mr. McAravey reports that Mr. Davis appears "lucid, responsive and able to understand and engage McAravey in conversations." Dkt. 110-1 at ¶ 5. Mr. McAravey believes that Mr. Davis's statements during court hearings "are not strange, but only that [Mr. Davis] believes that the court does not have jurisdiction over him." *Id.* at ¶ 7.

Special Agent McGeachy also submitted a "Memorandum of Conversation" describing his interview with Multnomah County Sheriff's Deputy Bret King. Dkt. 110-2. Deputy King has "been in charge of supervising [Mr. Davis's] dorm" at Inverness Jail since the beginning of 2013. Deputy King "described [Mr. Davis] as a model inmate who obeys all rules at Inverness Jail" and "appeared lucid in all of King's interactions with him." *Id.* at ¶ 5. Deputy King also states that Mr. Davis "maintains a clean bunk area" and has responded appropriately to commands. *Id.* at ¶¶ 4, 6.

On March 4, 2013, just before trial began, the Court held an evidentiary hearing. The United States called Special Agent McGeachy, Mr. McAravey, and Deputy Sheriff King. These latter two witnesses each testified consistently with the statements attributed to them by Agent McGeachy and were made available for cross-examination. Also, several audio recordings taken in February 2013 from conversations between Mr. Davis and Mr. McAravey were played in court and received in evidence.

In light of the Court's colloquy with Mr. Davis on October 29, 2012, and the evidence submitted by the United States, the Court finds that Mr. Davis is able to understand the proceedings and is capable of participating in his own defense. The Court understands that Mr. Davis has refused to assist Ms. Morgan in preparing for his defense. The Court is satisfied, however, that Mr. Davis has refused to work with his court-appointed counsel knowingly and voluntarily, rather than as a result of any mental defect, disease, or incompetence. Accordingly, the motion for a determination of mental competency is denied.

**B.      Motion for Order Clarifying Role of Defense Counsel**

Ms. Morgan also moves for an order clarifying her role as defense counsel. Dkt. 99. Ms. Morgan states that Mr. Davis has "politely but firmly told me that he could not avail himself

of my services for to do so would 'put him under contract' with the Court." *Id.* at ¶ 3.

Ms. Morgan reiterates that Mr. Davis has "refused to work with his defense team in any manner

whatsoever and all attempts I have made to engage him in the defense of his case are met with

correspondence in which Mr. Davis 'fires' me." *Id.* During a meeting after the February 20,

2013, Pre-Trial Conference, Mr. Davis "directed me not to undertake any actions at all during the

trial of this matter – no opening statement, do not question any of the witnesses, make no trial

objections and no argument." *Id.* at ¶ 5. In light of Mr. Davis's actions, Ms. Morgan requests that

the Court provide "guidance to define [her] role and on how to proceed in [her] court-ordered

defense of Mr. Davis in this matter." *Id.* at ¶ 9.

Ordinarily, a court-appointed attorney's "principal responsibility is to serve the undivided

interests of his client." *Ferri v. Ackerman*, 444 U.S. 193, 204 (1979). "Situations arise, however,

in which a lawyer is appointed to represent someone who declines the representation." American

Bar Association Formal Opinion 07-448 (Oct. 20, 2007). To determine the appropriate scope of

Ms. Morgan's role, therefore, the Court must begin by determining whether Ms. Morgan and

Mr. Davis have formed an attorney-client relationship. If Ms. Morgan and Mr. Davis are not in

an attorney-client relationship, Ms. Morgan does not have a professional responsibility to adhere

to the Oregon Rules of Professional Conduct governing representation. Ms. Morgan would,

however, have a responsibility to defend Mr. Davis as previously ordered by the Court. If

Ms. Morgan and Mr. Davis have entered an attorney-client relationship, Ms. Morgan must abide

by the Oregon Rules of Professional Conduct governing representation.

### 1.    Mr. Davis and Ms. Morgan are not in an attorney-client relationship

Under Oregon law, the "existence of a lawyer-client relationship may be inferred from

the circumstances and the conduct of the parties, and does not depend on a formal agreement." *In*

*re Conduct of Wittemyer*, 328 Or. 448, 456 (1999). Here, there is no formal agreement between Mr. Davis and Ms. Morgan. In addition, the circumstances and conduct of the parties demonstrate that Mr. Davis and Ms. Morgan have not entered into an attorney-client relationship. Mr. Davis has refused to meet with Ms. Morgan to prepare a defense. Dkt. 104 at ¶ 3. Mr. Davis has repeatedly sent correspondence to Ms. Morgan in which he "fires" Ms. Morgan. *Id.*

In addition, during a colloquy with the Court on March 4, 2013, in connection with the pending motions, Mr. Davis declined to answer the Court's questions about whether he will accept Ms. Morgan as his counsel in this matter, thereby reaffirming his previously-stated position that Ms. Morgan does not represent him. The Court concludes, therefore, that Mr. Davis and Ms. Morgan are not in an attorney-client relationship.

In such circumstances, where a court has appointed an attorney to represent a party, but that party has, nonetheless, refused representation, the American Bar Association has stated that the attorney's legal duties are defined by the court:

> When a tribunal requires a lawyer to act on behalf of a person against that person's will, there are two potential sources for the lawyer's obligations: (a) the express or implied terms of the order under which the obligation to act is imposed, and (b) the lawyer's obligations under the Rules to persons other than clients. Because the defendant never has accepted the representation, he has no basis to require or even to expect the lawyer to satisfy any of the obligations defined by those Rules that apply to the client-lawyer relationship.

American Bar Association Formal Opinion 07-488 (footnotes omitted). Because Mr. Davis has refused Ms. Morgan's representation, Ms. Morgan is not obligated to adhere to the Oregon Rules of Professional Conduct governing the attorney-client relationship.

Nonetheless, the Court has found that Mr. Davis has failed to unequivocally, knowingly, and voluntarily waive his right to representation by counsel, as he must in order to represent

himself. Dkt. 20; *see Faretta v. California*, 422 U.S. 806 (1975). Although Ms. Morgan is not

ethically obligated to follow the Oregon Rules of Professional Conduct governing the attorney-

client relationship, she is obligated to defend Mr. Davis as previously ordered by the Court.

To clarify Ms. Morgan's role, the Court sets forth the following guidelines: Ms. Morgan

shall defend Mr. Davis throughout his trial. Ms. Morgan shall put the Government's case to test.

To do so, Ms. Morgan shall manage the trial and may make tactical decisions, including whether

and how to conduct cross-examinations, what jurors to accept or strike, and what pre-trial and

trial motions to make. In addition, any decisions regarding witness selection and presentation

(with the exception of any testimony by Mr. Davis himself), objections to evidence, what

defenses to develop, whether and how to conduct an opening statement or closing argument, and

what stipulations, if any, to enter into are for Ms. Morgan to make using her best judgment and

trial skill. In light of Mr. Davis's continued refusal to cooperate or even meet with Ms. Morgan,

Ms. Morgan need not obtain Mr. Davis's consent before making any such tactical decisions.

Ms. Morgan must, however, timely attempt to inform Mr. Davis of her tactical decisions, her

reasons for pursuing them, and their implications. Ms. Morgan shall not enter a guilty plea,

waive a jury, or require Mr. Davis to testify at trial without Mr. Davis's express consent. *See

Government of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1434 (3d Cir. 1996) (collecting

cases); *see also U.S v. Chapman*, 593 F.3d 365, 368-69 (4th Cir. 2010).

### 2.      If Mr. Davis and Ms. Morgan enter an attorney-client relationship

If at any time during the course of the trial Mr. Davis were to enter into an attorney-

client relationship with Ms. Morgan, the Court should be informed and would then consider revising its

clarification of the obligations owed by Ms. Morgan and the allowable parameters of her

representation of Mr. Davis. Within the context of an attorney-client relationship, Ms. Morgan

would still have the authority to manage the conduct of the trial and make all tactical decisions

Page 8 – OPINION AND ORDER

without Mr. Davis's consent. *See Taylor v. Illinois*, 484 U.S. 400, 418 (1988). Ms. Morgan

would, however, be required to *consult* with Mr. Davis regarding all "important decisions,

including questions of overarching defense strategy." *Florida v. Nixon*, 543 U.S. 175, 187 (2004)

(internal quotations omitted). She need not, however, obtain Mr. Davis's *consent* for any such

decisions. *Id*. There are some decisions, however, that require a client's express consent. As the

Supreme Court has explained:

> [C]ertain decisions regarding the exercise or waiver of basic trial rights are
> of such moment that they cannot be made for the defendant by a surrogate.
> A defendant . . . has the ultimate authority to determine whether to plead
> guilty, waive a jury, testify in his or her own behalf, or take an appeal.

*Nixon*, 543 U.S. at 187 (internal quotation marks and citations omitted).

Under the Oregon Rules of Professional Conduct, an attorney "shall abide by a client's decisions

concerning the objectives of representation" and shall "consult with the client as to the means by

which they are to be pursued." Rule 1.2(a). This Rule also specifies that a lawyer must abide by

the client's decision "as to a plea to be entered, whether to waive jury trial and whether the client

will testify." Rule 1.2(a). This rule comports with the Constitutional limitations on when an

attorney must obtain express client consent. Under these rules, Ms. Morgan must keep Mr. Davis

informed and shall explain relevant issues to him "to the extent reasonably necessary to permit

the client to make informed decisions regarding the representation." Rule 1.4.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 9 – OPINION AND ORDER

## CONCLUSION

The Motion for a Determination of Competency, Dkt. 97, is **DENIED**. The Motion for an Order Clarifying Role of Counsel, Dkt. 99, is **GRANTED**. Ms. Morgan is directed to perform her duties as defense counsel for Mr. Davis as set forth in this Opinion and Order.

IT IS SO ORDERED.

Dated this 4th day of March, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge